## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEANNA STROM; BINTOU OUATTARA; SEHAM SWAILAM; ZETA CHARTER SCHOOLS; PERSISTENCE PREPARATORY ACADEMY; VALENCE COLLEGE PREP; and BUFFALO COLLEGIATE CHARTER SCHOOL,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>MIGUEL CARDONA, in his official capacity as Secretary of the U.S. Department of Education; and U.S. DEPARTMENT OF EDUCATION,<br><br>*Defendants*. | CIV. NO. 22-CV-04678<br><br>ADMINISTRATIVE PROCEDURE ACT REVIEW OF AGENCY DECISION |

## COMPLAINT

Plaintiffs Deanna Strom, Bintou Ouattara, Seham Swailam, Zeta Charter Schools ("Zeta"), Persistence Preparatory Academy ("Persistence"), Valence College Prep ("Valence"), and Buffalo Collegiate Charter School ("Buffalo Collegiate") allege as follows:

### PRELIMINARY STATEMENT

1.     This suit concerns an administrative action taken by the U.S. Department of Education ("the Department") that wrongfully deprived eight public charter schools in New York of nearly one million dollars in lawfully awarded federal and state grant funds.  This deprivation, which occurred through no fault of the Plaintiffs, caused Zeta, Persistence, Valence, and Buffalo Collegiate (collectively, "the School Plaintiffs") to lose significant budgeted funds during an unprecedentedly difficult time, and threatens their ability to deliver on the promise of a robust, quality education for some of New York's most under-resourced children.  This loss of funds

directly impacts parents who rely on the School Plaintiffs to deliver a quality education for their children, including Deanna Strom, Bintou Ouattara, and Seham Swailam (collectively, "the Parent Plaintiffs").

2.      Through the No Child Left Behind Act of 2001 ("NCLB") and the Every Student Succeeds Act of 2015 ("ESSA"), the Department administers Federal Charter School Programs ("CSP") grants designed to expand the number of high-quality charter schools, provide financial support for their operations, and enhance educational outcomes for America's schoolchildren. Pursuant to these programs, the Department awards CSP grants to various state entities ("SEs") to carry out activities consistent with this mission.  These SEs then use the awarded federal funds to subgrant monies to charter schools and related organizations on a competitive basis.

3.      CSP start-up grant funds have been critical to the growth of charter schools across the country, making high-quality public schools available to millions of families whose children would otherwise have no other option but to attend their zoned schools, where, in many cases, the vast majority of children are not reading, writing, or doing math on grade level.

4.      In fiscal year 2011 ("FY2011"), the Department awarded New York's State Education Department ("NYSED") a multimillion-dollar federal grant under NCLB to improve and support charter school operations in the State of New York (the "FY2011 CSP Grant").

5.      Each of the School Plaintiffs, all of which serve some of the most vulnerable and least-resourced children in the State, subsequently applied for and won competitive subgrants from NYSED.

6.      Over several years, the School Plaintiffs received regular disbursements of these critical funds for expenses that were to be reimbursed under the terms of their subgrants.

7.     In April 2020, the School Plaintiffs noticed the regular disbursements they were owed had not arrived.  This did not immediately come as a shock, given that the monies were due just weeks after the COVID-19 pandemic had taken hold of the country.  Disruptions during the early stages of the pandemic resulted in shutdowns and delays in critical services, forcing all of the School Plaintiffs to shift to remote learning.  As the disbursements became more and more overdue, however, the School Plaintiffs became increasingly concerned.  The School Plaintiffs began to make inquiries to NYSED and others regarding the status of the subgrant funds and the disbursement schedule.

8.     The School Plaintiffs were eventually advised by NYSED that the disbursements were delayed due to a bureaucratic issue that was being worked out internally, and were assured that the owed funds would be disbursed "as soon as possible."  Again, given that the country was still in the midst of the COVID-19 pandemic—with supply chains and services still interrupted and schools still focused on the challenges of educating children remotely—the School Plaintiffs reasonably assumed this "bureaucratic issue" was impacting CSP disbursements across New York State or even the country, and so they did not immediately sound alarm bells about the missing funds.

9.     After several months of repeated inquiries, Zeta eventually learned from NYSED in December 2021 that the grant funds the School Plaintiffs had been allocated and were owed had in fact been swept back from NYSED into the coffers of the United States Treasury ("Treasury").  As a result, NYSED could not disburse the remaining funds that the School Plaintiffs were promised and owed under their CSP subgrants.

10.     As the School Plaintiffs eventually learned, NYSED had been unable to disburse all of the FY2011 CSP Grant funds within the five-year grant term, and therefore requested and

was granted by the Department an extension of the grant term to allow NYSED to pay out all of the remaining grant funds to grant recipients.  Unbeknownst to NYSED, however, the grant funds were, despite this extension, apparently still subject to sweep back by Treasury at the expiration of the grant term.

11.     Following Treasury's sweep back, NYSED reached out to the Department to discuss how best to solve the problem of the grant recipients whose funds had not been paid out before the sweep back.  NYSED suggested that it should be permitted to reallocate funds from a similar charter school grant awarded to NYSED in fiscal year 2018 ("FY2018") to reimburse the School Plaintiffs for the funds they were owed.  The Department recommended and encouraged NYSED to submit to the Department a routine waiver request, asking for permission to reallocate a portion of the FY2018 funds for this purpose.[1]  Indeed, the Department went so far as to "suggest[] that the request would be permitted, consistent with similar requests that had previously been approved."[2]

12.     In October 2020, NYSED submitted the waiver request (the "Waiver Request") to the Department.  Given that the FY2011 and FY2018 CSP grant awards served identical purposes and all of the School Plaintiffs' expenses fell squarely within the categories of allowable uses of grant monies under both programs, the reallocation of funds between the two programs to make the School Plaintiffs' disbursements was a no-brainer.

13.     Notwithstanding the Department having expressed initial support for this straightforward solution to a manifestly unfair situation, in July 2021, the Department inexplicably

---

[1] *See* Exhibit A – NYSED Letter to Zeta re: CSP Grant Awards, Contract Nos. C403185 & C403186, June 2, 2022.
[2] *Id.*

denied NYSED's Waiver Request.  In its denial letter, the Department claimed it lacked the administrative authority to grant a waiver request reallocating charter school grant funds.

14.     Relevant statutes and regulations unambiguously vest the Department with discretion to issue waivers like the one requested by NYSED.  Granting the waiver is necessary here to protect the students whose schools rely on grant funds to carry out their mission of providing access to high-quality education and opportunity, and also to effectuate Congressional intent underlying the CSP.  Indeed, just months after the Department's denial, the Department granted waiver requests to NYSED and other state education agencies concerning the very same grant program—the FY2018 CSP Grant—to permit grant funds to be allocated for a new purpose (COVID-related expenses), also in furtherance of Congressional intent of increasing students' access to high-quality education.

15.     The Department's decision to deny NYSED's Waiver Request was made without justification based in law or fact and has left NYSED without the financial means to disburse funds that the School Plaintiffs are indisputably owed.  By denying NYSED's Waiver Request, the Department has in effect stripped the School Plaintiffs of their lawfully awarded subgrants—funds that they were promised to support and serve some of America's most vulnerable and least-resourced students, including the Parent Plaintiffs' children.

16.     In light of the Department's express authority to grant waiver requests like the one at issue in this case, as well as its history of granting similar requests related to CSP grant funds, the denial of NYSED's Waiver Request is inadequately explained, not the product of reasoned decision making, and results in the disparate treatment of similarly situated parties with no justification based in law or fact.  Plaintiffs therefore bring this action under the Administrative Procedure Act, 5 U.S.C. §§ 551, *et seq.*, ("APA") to seek this Court's review of the Department's

letter denial as arbitrary and capricious.  Plaintiffs ask this Court to vacate the Department's letter denial and remand to the Department with instructions to appropriately consider NYSED's Waiver Request.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1346 (United States as a defendant), and 5 U.S.C. §§ 701-06 (Administrative Procedure Act).  An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a) and this Court may grant declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201-02 and 5 U.S.C. §§ 705-06.

18.    Defendants' letter denying NYSED's request for a waiver from CSP SE Grant Award U282A180019 constitutes final agency action and is therefore judicially reviewable under the APA.  5 U.S.C. §§ 551(13), 704, 706.

19.    Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(C) because this action seeks relief against federal agencies and officials acting in their official capacities, Plaintiffs reside in this district, and no real property is involved in the action.

## PARTIES TO THE ACTION

20.    Plaintiff Deanna Strom is the mother of two children, E.O. and A.A., who attend Zeta Charter School - Inwood 1 ("Zeta Inwood").  Ms. Strom and her children reside in New York, New York.  E.O. is seven years old and in first grade at Zeta Inwood, and A.A. is five years old and in kindergarten at Zeta Inwood.  E.O. and A.A. both love playing soccer and participate in Zeta's Saturday soccer practice.

21.    Plaintiff Bintou Ouattara is the mother of two children, M.O. and C.O., who attend Zeta Charter School - Bronx 1 ("Zeta South Bronx").  Ms. Ouattara and her children reside in the Bronx, New York.  M.O. is nine years old and in third grade at Zeta South Bronx, and C.O. is six

years old and in first grade at Zeta South Bronx. M.O. participates in Zeta's after-school Taekwondo program and his favorite subject in school is Math, whereas C.O. participates in Zeta's after-school dance program and his favorite subject in school is Independent Reading.

22.     Plaintiff Seham Swailam is the mother of three children, A.I., D.I., and M.I., who attend Zeta South Bronx.  Ms. Swailam and her children reside in the Bronx, New York.  A.I. is nine years old and in the first grade, D.I. is eight years old and in the first grade, and M.I. is four years old and in pre-K.  All of Ms. Swailam's children are English language learners and love their teachers and friends at the school.

23.     Plaintiff Zeta is a free charter school system founded in 2017 with the approach of fostering the education, heart, healthy body, and mind in a diverse community of New York City elementary schoolchildren.  Zeta operates four elementary schools across five campuses in the Bronx and Upper Manhattan, including Zeta South Bronx and Zeta Inwood.  Together, Zeta's schools currently serve approximately 1500 elementary students from pre-kindergarten through fourth grade, and will add one grade every year until they serve pre-kindergarten through twelfth grade.  Zeta maintains an office at 222 Alexander Avenue, Bronx, New York 10454.

24.     Plaintiff Persistence is a free charter school founded in 2017 with the purpose of ensuring that all its students are firmly on the path to succeed within a four-year college and to create positive change within their communities.  Persistence operates the Persistence Preparatory Academy Charter School in Buffalo, New York.  Persistence serves more than 270 students from kindergarten through fourth grade.  Persistence maintains an office at 378 Urban Street, Buffalo, New York 14211.

25.     Plaintiff Valence is a free charter school founded in 2018 with the purpose of equipping students with the academic skills, professional habits, and strength of character to

graduate from college and lead lives of opportunity.  Valence operates the Valence College Prep Charter School in Queens, New York.  Valence serves more than 330 students from fifth through eighth grades.  Valence maintains an office at 97-29 64th Road, Rego Park, New York 11374.

26.     Plaintiff Buffalo Collegiate is a free charter school founded in 2018 with the mission of educating students to graduate from the college of their choice and serve as our next generation of leaders.  Buffalo Collegiate operates the Buffalo Collegiate Charter School in Buffalo, New York.  Buffalo Collegiate serves approximately 300 students from grades four through eight.  Buffalo Collegiate maintains an office at 45 Jewett Avenue, Buffalo, New York 14214.

27.     Defendant Miguel Cardona is the Secretary of the Department.  His official address is at 400 Maryland Avenue, SW, Washington, D.C. 20202.  Mr. Cardona is responsible for the oversight of the activities of the Department and the Department's Office of Elementary and Secondary Education, including with regard to the FY2011 CSP State Educational Entity ("SEA") and FY2018 CSP SE grant programs and the actions complained of herein.  He is included in this lawsuit in his official capacity.

28.     Defendant the Department of Education is an executive department of the United States Government headquartered in Washington, D.C. at 400 Maryland Avenue, SW, Washington, D.C. 20202.  The Department is responsible for implementing various grant programs, including the two grant programs involved in this action, FY2011 CSP SEA and FY2018 CSP SE.

## LEGAL FRAMEWORK

### *The Administrative Procedure Act*

29.     Under the Administrative Procedure Act, "a court must 'hold unlawful and set aside agency action, findings, and conclusions' that are 'arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A), 'in excess of statutory jurisdiction,' *id.* § 706(2)(C), or 'without observance of procedure required by law.'" *Sakievich v. United States*, 369 F. Supp. 3d 278, 287 (D.D.C. 2019) (quoting *Id.* § 706(2)(D)).

30.    An agency's decision is arbitrary and capricious if it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

31.    Moreover, the "agency must cogently explain why it has exercised its discretion in a given manner . . . and that explanation must be sufficient to enable [a court] to conclude that the agency's action was the product of reasoned decision making." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (alterations in original) (quoting *State Farm*, 463 U.S. at 48, 52). Under "this narrow standard of review, [courts] insist that an agency examine the relevant data and articulate a satisfactory explanation for its action." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (internal quotation marks omitted).

32.    Furthermore, "where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld." *Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005).

### *No Child Left Behind Act*

33.    On January 8, 2002, NCLB was signed into law, creating the Charter School Programs or CSP, pursuant to which the Department awards multimillion dollar grants to SEAs,

which then award subgrants to state charter schools and related organizations that are otherwise

not eligible for state funding.

      34.    The purpose of the CSP SEA is to:

      (1)    improve the United States education system and education opportunities for all people in the United States by supporting innovation in public education in public school settings that prepare students to compete and contribute to the global economy and a stronger Nation;

      (2)    provide financial assistance for the planning, program design, and initial implementation of charter schools;

      (3)    increase the number of high-quality charter schools available to students across the United States;

      (4)    evaluate the impact of charter schools on student achievement, families, and communities, and share best practices between charter schools and other public schools;

      (5)    encourage States to provide support to charter schools for facilities financing in an amount more nearly commensurate to the amount States typically provide for traditional public schools;

      (6)    expand opportunities for children with disabilities, English learners, and other traditionally underserved students to attend charter schools and meet the challenging State academic standards;

      (7)    support efforts to strengthen the charter school authorizing process to improve performance management, including transparency, oversight and monitoring (including financial audits), and evaluation of such schools; and

      (8)    support quality, accountability, and transparency in the operational performance of all authorized public chartering agencies, including State educational agencies, local educational agencies, and other authorizing entities.

20 U.S.C. § 7221(1)–(8).

      35.    The statute outlines an extensive application process that SEAs must complete to

receive funding from the Department.  20 U.S.C. § 7221(b).  Among other things, SEAs must

submit an application that describes the objectives of the State educational agency's charter school

grant program and a description of how such objectives will be fulfilled, including steps taken by

the SEA to inform teachers, parents, and communities of the State educational agency's charter school grant program.  *See id.*

36.     Between fiscal year 2009 and fiscal year 2012, a total of 22 CSP SEA awards were distributed to several states by the Department.[3]

37.     While the grant term of CSP SEA awards can vary, most awards have a five-year term.  The total amount distributed for each award depends on the demonstration of need conveyed in each SEA application.

38.     From 2009 to 2012, the Department distributed a total of $868,992,227 to SEAs.[4] In 2011, New York was awarded a CSP SEA grant worth $113,343,065, to be distributed over the span of five years.[5]

### *Every Student Succeeds Act*

39.     In 2015, Congress enacted ESSA, which replaced the NCLB-era CSP SEA grant program with the CSP SE grant program, also known as "Expanding Opportunities Through Quality Charter School Programs Grants to State Entities."  *See* 20 U.S.C.A. Ch. 70.

40.     ESSA defines State Entities as: "(1) a State educational agency; (2) a State charter school board; (3) a Governor of a State; or (4) a charter school support organization." 20 U.S.C. § 7221(b).

41.     Though the new CSP SE program differs slightly from its predecessor, ESSA did not change the purpose of the original grant program.  Indeed, the overriding objective remained the same—to improve the quality of education in the United States by providing support to charter schools.

---

[3]  Charter School Programs Awards, Office of Elementary & Secondary Education, https://perma.cc/7LGF-U9DH (last visited May 31, 2022).
[4] *Id.*
[5] *Id.*

42.     The legislative history demonstrates that members of Congress intended to carry through support for the fundamental purposes of the charter school grant programs after the switch from NCLB to ESSA.

43.     For example, Representative Jared Polis commented that ESSA

> maintains strong support for high-quality charter schools, something that I have made a hallmark of my time here in Congress and have been a coauthor of bills that have passed this body overwhelmingly. That charter school language is reflected in this bill.  The language would improve charter school access and service for all students, give new innovative charter schools those tools they need to meet their goal of serving at-risk and diverse students that ensure that our limited Federal investment supports the replication and expansion of high-quality, innovative charter schools.

161 Cong. Rec. H8863 (2015).

44.     Representative John Kline noted that "[t]he conference agreement strengthens school choice by reforming programs that affect charter schools and magnet schools, and it prevents any Federal interference with our Nation's private schools and home schools."  161 Cong. Rec. 19192 (2015).

## FACTUAL ALLEGATIONS

### *The Plaintiffs*

#### A.     Deanna Strom

45.     Deanna Strom is the mother of two children—a daughter A.A. and a son E.O.—who attend Zeta Inwood.  A.A. is a five-year-old kindergartener and E.O. is a seven-year-old first grader.  E.O. has been diagnosed with a speech impairment and has an Individualized Education Plan ("IEP").  He currently receives speech therapy at Zeta Inwood.

46.     Ms. Strom sought out a charter school option because she wanted her children to receive a quality education and had concerns about the ability of her zoned public schools to adequately serve the needs of her son.  At Zeta Inwood, Ms. Strom found a hands-on and energetic

community of educators who are dedicated to the success and growth of each student.  Her children have thrived at Zeta Inwood and she credits the school for her decision to remain in New York.  In particular, E.O. has received the individualized education that he needs.  When he started at Zeta Inwood as a kindergartener, E.O. had severe speech problems.  Now, he speaks almost clearly and has experienced remarkable academic growth, even during the tough years of the pandemic.

### B.     Bintou Ouattara

47.     Bintou Ouattara is the mother of two boys, M.O. and C.O., who attend Zeta South Bronx.  C.O. is a six-year-old in first grade.  M.O. is nine years old and in third grade.  M.O. has been diagnosed with a learning disability, has an IEP, and is a student in an integrated co-teaching classroom.  Both of Ms. Ouattara's sons are English Language Learner ("ELL") students, because the family speaks French in the home.

48.     Ms. Ouattara and her family moved to New York City from the Ivory Coast in August 2019.  During their first year in the United States, M.O. and C.O. attended their zoned public school.  Both boys struggled to integrate, in part because of challenges learning English.

49.     Ms. Ouattara's children began attending Zeta South Bronx during the 2020-21 school year.  Despite the challenges of the pandemic, Ms. Ouattara noticed a significant change in M.O. and C.O.  In less than a year, M.O. and C.O. went from speaking no English to being fluent in the language.  Ms. Ouattara cherishes the community Zeta South Bronx has provided for M.O. and C.O. and the individual attention they both receive in the classroom.

### C.     Seham Swailam

50.     Seham Swailam is the mother of three children, A.I., D.I., and M.I, who attend Zeta South Bronx.  A.I. and D.I. are nine and eight years old, and both are in first grade. M.I. is four years old and in pre-K.

51.     All of Ms. Swailam's children are ELL students and speak Arabic in the home. When they started at Zeta South Bronx in the 2020-21 school year, Ms. Swailam's children spoke virtually no English.  Now, the children are fluent in the language.  Ms. Swailam is grateful to Zeta for the enormous progress her children have made and for the community of teachers and friends Zeta has provided.

52.     Like all parents with students at the Plaintiff Schools, Ms. Strom, Ms. Ouattara, and Ms. Swailam rely on Zeta to deliver a quality education and community for their children.  The Department's decision to deny the Plaintiff Schools the critical funds necessary to serve under-resourced students has directly impacted Ms. Strom, Ms. Ouattara, and Ms. Swailam's families, and hundreds of others just like them.

### D.     Zeta

53.     Zeta is on a mission to ensure that every child in America has access to the highest-quality free education from pre-kindergarten through twelfth grade.

54.     Zeta currently operates four public charter schools across five campuses serving the most under-resourced areas of New York City, including the Bronx and Upper Manhattan.  Zeta aims to add 1-2 new schools every year and, over the next decade, to operate 20-25 schools serving 13,000 pre-kindergarten through twelfth grade students at scale.

55.     Zeta was founded on the belief that all children have the potential to achieve at the highest levels and that mining children's full potential is the key to building thriving communities of lifelong learners and productive world citizens.  Zeta is committed to building high-performing, replicable public charter schools that challenge, inspire, and prepare children for a future with limitless opportunities.  Every child should have access to a high-quality public-school education, and Zeta's school design centers on a curriculum that provides a top-notch education to all students, irrespective of socioeconomic, racial, ethnic, or other status.

56.     Despite the COVID-19 pandemic, Zeta remained laser-focused on providing excellent education.  From the first day of remote learning, Zeta provided laptops for every child in need.  Zeta also provided cell phones with hotspots for families without Internet access to ensure all of their students could attend school remotely.  As a result of these efforts, Zeta was able to maintain an extremely high attendance average of nearly 96% throughout the 2020-21 school year.

57.     On August 31, 2020, Zeta was the first elementary school in New York City to return to in-person schooling five days a week, initially with approximately 20% of students attending school in-person and gradually increasing to over 50% of students attending school in person during the spring term of 2021.[6]  The remainder of students received rigorous, live remote instruction during this time.

58.     During the 2020-21 school year, across the nation, economically disadvantaged children fell behind in school by an additional six to seven months, on average, due to the impacts of COVID-19.[7]  Despite the immense challenges of educating children during the height of the pandemic, Zeta undertook extraordinary efforts to ensure its students would not be left months behind; as a result, last year, Zeta students grew one full year in reading, on average, and had an average third-grade passing rate of 80% on the New York state test.

59.     Zeta's diligent efforts to ensure the continuity of excellent teaching and learning during the pandemic unsurprisingly required a significant increase in unanticipated expenditures.

---

[6] Leslie Brody, *One New York City School Opened Weeks Ago, Says It Can Be Done*, Wall Street Journal, (Sept. 19, 2020, 8:55 AM), https://www.wsj.com/articles/one-new-york-city-school-opened-weeks-ago-says-it-can-be-done-11600516800.

[7] Emma Dorn *et al.*, *COVID-19 and Education: The Lingering Effects of Unfinished Learning*, McKinsey & Company, at 2, 5 (July 27, 2021), https://mck.co/3BpHLLD (last visited May 16, 2022).

As a result, Zeta has been even more reliant on access to public grants like CSP funding to supplement its per-pupil allocations.

60.     Zeta served as an important safety net for families during the pandemic.  The schools provided grocery gift cards to families with immediate food insecurity needs and partnered with the National Action Network to distribute food from its Bronx school to the broader South Bronx community.  Zeta also helped connect families facing food and housing insecurity with New York City Social Services to ensure long-term support.

61.     Zeta became a national leader navigating safe in-person schooling and virtual learning during the pandemic crisis.  Following its August 2020 full-time, in-person reopening, Zeta received questions from hundreds of school leaders across the country seeking guidance.  To meet the increasing number of inquiries, Zeta launched a "school reopening blog."[8]  Zeta also hosted a webinar presenting on safe school reopening, which was attended by more than 100 school leaders nationwide.

### E.     Valence

62.     Valence is a public charter school located in Queens, New York.  The school serves approximately 330 students in grades five through eight.

63.     Valence's objective is to equip all students with the academic skills, professional habits, and strength of character to graduate from college and lead lives of opportunity.

64.     A substantial 5% of Valence's annual operating budget is paid using external grants like the CSP grants.  Valence uses these grants to fund multiple staff positions and important programs in the school, from instructional programs for students at academic risk to nutritional programs for students to receive breakfast and lunch.

---

[8]  Zeta Schools, 2020 School Reopen Blog, https://zetaschools.org/category/zeta-charter-schools/2020-school-reopen/ (last visited May 13, 2022).

65.     Like any charter school, receiving grant funds reliably and on schedule is critical to Valence's operations.  If the school cannot count on promised grant funds being paid on time or at all, it will need to conservatively constrain programs to ensure the school remains solvent and operational, which would have a negative impact on student academic progress.

### F.      Persistence

66.     Persistence is a public charter school located in Buffalo, New York.  The school serves approximately 270 students in kindergarten through fourth grade.

67.     Persistence uses rigorous academics, high-quality instruction, and leadership development to ensure that all of its students are on the path to succeed in a four-year college and create positive change in their communities.

68.     In 2022, one-third of Persistence's annual budget will be covered using external grant funding.  Given the school's significant dependence on these grant monies, the denial of budgeted funds can significantly impede operations and harm educational outcomes for students.

### G.      Buffalo Collegiate

69.     Buffalo Collegiate is a public charter school located in Buffalo, New York.  The school serves approximately 300 students in fourth through eighth grades.

70.     With unrelenting determination and a commitment to excellence, Buffalo Collegiate educates students to graduate from the college of their choice and serve as our next generation of leaders.

71.     A significant percentage of Buffalo' Collegiate's annual operating budget is derived from external funds like the CSP grants.  Without these funds, Buffalo Collegiate could not deliver on the promise of a quality education for its students.

### The Department Awards FY2011 CSP SEA Grant to NYSED

72.     On January 24, 2011, the Department began accepting applications from SEAs for the FY2011 CSP grant.[9]  The application specified that SEA CSP grant funds were to be awarded to subgrantee charter schools and related entities within the state for planning, program design, and the initial implementation of a charter school, and to support the dissemination of information about charter schools, including successful practices.

73.      On May 17, 2011, NYSED applied to the Department for the FY2011 CSP SEA Grant.[10]  NYSED's application expressed four project objectives:

     i.  To increase the number of high-quality charter schools in New York State, especially those serving students who are at greatest risk of not meeting State academic standards;

     ii.  To strengthen the overall quality of the New York State charter authorizing and CSP grant administrative infrastructure;

     iii.  To promote the dissemination of New York State charter school best practices to other public schools; and

     iv.  To improve student achievement outcomes in New York State charter schools, particularly for students who are at greatest risk of not meeting State academic standards.

---

[9] *FY 2011 Application For Grants Under The Charter Schools Program*, U.S. Department of Education, at 12 (Jan. 25, 2011), https://bit.ly/3OWy2Tk.
[10] *See Application for Grants under the 2011 CSP 84.282A (SEA) Applications*, New York State Education Department, at e3 (Mar. 17, 2011), https://bit.ly/3ycSFF1.

74.     In July 2011, the Department awarded NYSED a five-year CSP SEA grant to meet these four project objectives.  The FY2011 CSP SEA amounted to $113,343,065[11] and was scheduled to last from 2011 through 2016.[12]

75.     In September 2014, a fourth year of NYSED's FY2011 CSP grant funds were awarded to NYSED, with an expiration date of September 30, 2019.[13]

### The Department Awards FY2018 CSP SE Grant to NYSED

76.     On March 9, 2018, the Department began accepting applications for the FY2018 CSP SE grant.[14]  Just as the Department did when opening applications for the FY2011 CSP SEA grant, the Department specified that CSP grant recipients could use their funds to award subgrants to charter schools and related entities for planning, program design, and the initial implementation of a charter school, and to support the dissemination of information about charter schools, including successful practices.

77.     On April 19, 2018, NYSED applied for funding under the FY2018 CSP SE grant program by again proposing a four-objective project.[15]  Clearly drawing from its FY2011 CSP SEA Grant application, NYSED's four objectives were:

i. To increase the number of high-quality charter schools in New York State, especially those serving students who are at greatest risk of not meeting State academic standards;

---

[11] *Charter Schools Program State Educational Agencies (SEA) Grant*, U.S. Department of Education, https://bit.ly/3s7zskm (last updated Feb. 22, 2022).

[12] *See* Yoav Gonen, *Feds' $113M Will Boost NY Charters*, New York Post (July 26, 2011, 4:00 AM), https://bit.ly/3OVFjTt.

[13] *See Letter to Senator Gillibrand*, U.S. Department of Education, at 2 (Feb. 10, 2022), https://bit.ly/3kBuTKV.

[14] *See FY 2018 Competition*, Office of Elementary & Secondary Education, https://bit.ly/39tezJP.

[15] *See 2021 CSP Response to COVID-19 Grants*, NYSED Charter Schools Office, https://bit.ly/3OKxQ9M (last visited May 2, 2022).

ii. To improve student achievement outcomes in New York State charter schools, particularly for students who are at greatest risk of not meeting State academic standards, by providing high quality charter authorizing and technical assistance;

iii. To promote the dissemination of New York State charter school best practices to other public schools; and

iv. To strengthen the overall quality of the New York State charter authorizing and CSP grant administrative infrastructure.

78.     In October 2018, the Department awarded NYSED with a five-year CSP SE grant to meet these four project objectives, which were in all material respects identical to NYSED's objectives for its FY2011 CSP Grant.  The FY2018 CSP SEA grant amounted to $78,888,888.

### *School Plaintiffs Apply for and Win Subgrants*

79.     The School Plaintiffs each applied for and were awarded FY2011 CSP SEA grants from NYSED, guaranteeing them access to critical start-up funding without which they likely would not have been able to launch and sustain high-quality schooling and operations in their first five years.

80.     In early 2018, Zeta Inwood and Zeta South Bronx applied for FY2011 CSP SEA subgrant funding from NYSED.  Both schools were awarded subgrants with funds to be disbursed over three fiscal years: 2018, 2019, and 2020.

81.     Following approval of Zeta Inwood's subgrant, on April 16, 2018, NYSED deposited an initial 20% grant deposit in the amount of $76,041 for fiscal year 2018 into Zeta Inwood's account.

82.     Following approval of Zeta South Bronx's subgrant, NYSED deposited an initial 20% grant deposit in the amount of $76,041 for fiscal year 2018 into Zeta South Bronx's account.

83. On or around September 28, 2018, Zeta Inwood and Zeta South Bronx submitted to NYSED Forms FS-10F, detailing their final expenditure reports for the fiscal year.

84. On October 22, 2018, Zeta Inwood and Zeta South Bronx received from NYSED the outstanding balance of their CSP reimbursements for FY2018.

85. On or around August 21, 2019, Zeta Inwood and Zeta South Bronx submitted Forms FS-10F for FY2019, the second CSP grant year, to NYSED.

86. On September 3, 2019, Zeta Inwood and Zeta South Bronx received the full balance of their CSP reimbursements for FY2019.

87. On February 7, 2020, Zeta Inwood submitted a continuation application[16] to NYSED for FY2020, the final CSP grant year.  The continuation application contained a budget narrative for FY2020, as well as Form FS-10 for the year.

88. On February 7, 2020, Zeta South Bronx also submitted a continuation application to NYSED for FY2020.  Like Zeta Inwood, Zeta South Bronx's application contained a budget narrative and a Form FS-10 for FY2020.

89. On February 27, 2020, NYSED deposited an initial 20% CSP grant deposit in the amount of $42,568 for FY2020 into Zeta Inwood's account.

90. On March 12, 2020, NYSED deposited an initial 20% CSP grant deposit in the amount of $11,820 for FY2020 into Zeta South Bronx's account.

91. On May 26, 2020, both Zeta Inwood and Zeta South Bronx submitted Form FS-10As to request budget amendments for FY2020.

---

[16] For FY2019 and FY2020, Zeta had to submit a continuation application to NYSED for Zeta Inwood and Zeta South Bronx, along with a budget narrative and Form FS-10, demonstrating how it planned to allocate its CSP grant funds.

92.     On August 29, 2020, Zeta Inwood submitted a Form FS-10F for FY2020, requesting reimbursement for the outstanding portion of its approved $212,843 budget, which totaled $170,275.  The total budget of $212,843 was designated for the following categories of expenses:

      (1)     Professional salaries, in the amount of $69,525;

      (2)     Purchased services, in the amount of $96,505;

      (3)     Supplies and materials, in the amount of $29,529; and

      (4)     Employee benefits, in the amount of $17,284.

93.     On August 29, 2020, Zeta South Bronx also submitted a Form FS-10F for FY2020, requesting reimbursement for the outstanding portion of its approved $59,104 budget, which totaled $47,284.  The total budget of $59,104 was designated for the following categories of expenses:

      (1)     Professional salaries, in the amount of $38,104;

      (2)     Purchased services, in the amount of $19,000; and

      (3)     Supplies and materials, in the amount of $2,000.

94.     Zeta anticipated receiving, and was entitled to receive, the remaining balance of the FY2020 CSP award by September of 2020.  The funds were never disbursed.

95.     Between Zeta Inwood and Zeta South Bronxschools, Zeta is owed $217,559 in undisbursed funds.

96.     After repeated inquiries to NYSED and members of Congress, in December 2021, Zeta learned that the funds for its subgrants had been swept back from NYSED by Treasury.

97.     Like Zeta, the remaining School Plaintiffs applied for and were awarded subgrants from NYSED's FY2011 CSP grant.

98.    Persistence applied for and won a subgrant from NYSED's FY2011 CSP grant in 2017.  Expenses reimbursable under the subgrant to Persistence included costs for supplies, classroom materials, and computers for staff and students.

99.    For several years, Persistence received the owed disbursements as expected and scheduled.

100.    In the Fall of 2021, Persistence learned through a communication with NYSED that the remaining balance of its subgrant had been swept back by Treasury.  At that time, Persistence was owed a remaining $78,114 under its subgrant.

101.    Valence applied for and won a subgrant from NYSED's FY2011 CSP grant in December 2018.  Expenses reimbursable under the subgrant to Valence included the cost of providing computers and other essential classroom materials for Valence's students.

102.    Like the other School Plaintiffs, Valence received the owed disbursements as expected and scheduled for several years.  Eventually, the reimbursements stopped.

103.    In February 2022, Valence learned of the sweep back from Zeta.  Valence is owed an outstanding balance of $46,276 under its subgrant with NYSED.

104.    Buffalo Collegiate applied for and won a subgrant from NYSED's FY2011 CSP grant in 2017.  Expenses reimbursable under the subgrant to Buffalo Collegiate included costs for professional salaries, purchased services, and classroom supplies and materials.

105.    Once again, Buffalo Collegiate received the owed disbursements as expected and scheduled for several years.  Eventually, the reimbursements stopped.

106.    In March 2022, Buffalo Collegiate learned of the sweep back from a communication with NYSED.  Buffalo Collegiate is owed an outstanding balance of $24,242 under its subgrant with NYSED.

### Treasury's Sweep Back of the FY2011 CSP SEA Grant

107.    In October 2019, Treasury swept back all NYSED's undisbursed FY2011 CSP SEA year-four grant funding, apparently because the grant funds had not been disbursed in a timely fashion, despite NYSED having received extensions to the grant term from the Department.

108.    According to NYSED, upon learning of the sweep back, it immediately contacted the Department, which "recommended and encouraged NYSED to submit a request to re-allocate the remaining subgrant awards from the 2011 grant to the 2018 grant."[17]  NYSED has explained that the Department "officials implied that the request would be permitted, consistent with similar requests that had previously been approved."[18]

### NYSED Petitions the Department for a Waiver

109.    On October 30, 2020, NYSED submitted its formal Waiver Request to the Department asking for permission to reallocate funds from the FY2018 CSP SE grant to reimburse the School Plaintiffs for their lawfully awarded, but undisbursed, grant funding.[19]

110.    In its Waiver Request, NYSED explained to the Department that "[i]f granted, th[e] waiver w[ould] allow NYSED to continue to fulfill the spirit and requirements of the CSP Grant Program—to create high-quality public education options and seats for children."[20]

111.    NYSED also explained that "there was a mutual misunderstanding" regarding the expiration of the FY2011 CSP SEA grant funding, which, according to NYSED, was "no doubt

---

[17] *See NYSED Letter to Senator Gillibrand*, New York State Education Department (Dec. 1, 2021), https://bit.ly/39B1P43; *NYSED Letter to Senator Schumer*, New York State Education Department (Dec. 1, 2021), https://bit.ly/37ahmqy.
[18] *Id.*
[19] *See* Exhibit B – NYSED Waiver Request from CSP SE Grant Award U282A180019, October 30, 2020.
[20] *Id.*

exacerbated by the COVID-19 crisis and the ensuing increased workloads at both the Department and NYSED."[21]

112.    Finding itself without other fiscal means to disburse to the School Plaintiffs the funds they were owed, and acting on the earlier advice of the Department, NYSED's Waiver Request proposed that the Department allow a small fraction of NYSED's FY2018 CSP SE award, which still had $86 million available for subgrants, to be reallocated so that the School Plaintiffs could be reimbursed.[22]

### The Department Rejects NYSED's Waiver Request

113.    Despite having encouraged NYSED to request a waiver, the Department denied NYSED's Waiver Request by letter dated July 22, 2021 (the "Denial Letter").[23]

114.    The Department's decision to deny the Waiver Request was based on a single disclosed premise: that the Department lacked the administrative authority under applicable statutes and regulations to reallocate awarded funds between the CSP SEA and SE Grant Programs. In its Denial Letter, the Department selectively cited a series of statutes and regulations concerning federal appropriations and the CSP grant programs to justify its stated position that it lacked discretion to act.

115.    Far from supporting its position, the cited authorities make clear that the Department had the discretion to grant NYSED's waiver.

116.    For example, the Department cited 31 U.S.C. § 1301(a)—the relevant federal appropriations law—for the proposition that "appropriations shall be applied only to the objects for which the appropriations were made."  The letter, however, deceptively omitted the important

---

[21] *Id.*

[22] *Id.*

[23] *See* Exhibit C – Department of Education Letter Denying NYSED's Waiver Request re: CSP SE Grant Award U282A180019, July 22, 2021.

qualifier "except as otherwise provided by law," which immediately follows the cited clause.  As set forth below, several sources of law vest the Department with explicit authority to change the terms or conditions of a grant award made pursuant to the CSPs.

117.   The Denial Letter also cited the Department regulations found at 34 C.F.R. part 75, which concern grant allocations for the CSPs.  Those regulations provide that "[a] grantee shall comply with . . . applicable statutes, regulations, and approved applications, and shall use Federal funds in accordance with those statutes, regulations, and applications."  The Department's letter, however, ignores that the regulation specifically contemplates "applicable statutes."  Here, relevant statutory provisions include Section 4303 of the Elementary and Secondary Education of 1965, which provide that "[t]he "Secretary [of Education] may waive any statutory or regulatory requirement over which the Secretary exercises administrative authority . . . ."  20 U.S.C. § 7221b(d)(5).  Because the Department exercises authority over the administration of the CSP SEA and SE grant programs, *see* 20 U.S.C. § 7221b(b), the Department has express authority to "waive any statutory or regulatory requirement" concerning the programs, including by granting a waiver for the reallocation of funds between programs, 20 U.S.C. § 721b(d)(5).

118.   Finally, the Denial Letter cited two provisions of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards for the proposition that funds cannot be shifted between federal grant programs.  First, the denial letter referenced Uniform Guidance 2 CFR § 200.405(c):

> Any cost allocable to a particular Federal award under the principles provided for in this part may not be charged to other Federal awards to overcome fund deficiencies, to avoid restrictions imposed by Federal statutes, regulations, or terms and conditions of the Federal awards, or for other reasons.  However, this prohibition would not preclude the non-Federal entity from shifting costs that are allowable under two or more Federal awards in accordance with

> existing Federal statutes, regulations, or the terms and conditions of
> the Federal awards.

(emphasis added).  In citing this provision, the Department once again omitted the crucial

language underlined above, which makes crystal clear that grant monies can be shifted between

similar programs if, as here, the reallocation is otherwise permitted under federal law or agency

discretion.

119.    As previously explained, FY2011 CSP SEA and FY2018 CSP SE are quite

similar—so similar, in fact, that the expenses eligible for reimbursement by FY2011 CSP SE, the

grant funding swept back by Treasury, are equally eligible for reimbursement under the FY2018

CSP SE.

120.    The School Plaintiffs sought reimbursement for the following expenses:

(1)    Zeta Inwood sought reimbursement for (1) professional salaries, (2)
purchased services, (3) supplies and materials, and (4) employee benefits.
Similarly, Zeta Bronx sought reimbursement for the following expenses: (1)
professional salaries, (2) purchased services, and (3) supplies and materials.

(2)    Persistence sought reimbursement for (1) supplies, (2) classroom materials,
and (3) computers for staff and students

(3)    Valence sought reimbursement for (1) computers and (2) classroom
materials.

(4)    Buffalo sought reimbursement for (1) professional salaries, (2) purchased
services, and (3) classroom supplies and materials.

Again, professional salaries, purchased services, employee benefits, classroom supplies, and other

resources and materials for students are all allowable expenses under both the FY2011 CSP SEA

and FY2018 CSP SE awards made to NYSED.   Reimbursing these costs also furthers the

overriding purpose of the CSP, which is to provide financial assistance for the planning, program design, and initial implementation of charter schools and to increase the number of high-quality charter schools available to students across the United States.  *See supra* ¶¶ 32-43, 69-75.

121.    The Department also asserted that it did not have the authority to grant NYSED's Waiver Request because of Uniform Guidance 2 CFR § 200.403, which requires that costs must:

> "[b]e necessary and reasonable for the performance of the Federal award and be allocable thereto under these principles" and "must be incurred during the approved budget period.  <u>The Federal awarding agency is authorized, at its discretion, to waive prior written approvals to carry forward unobligated balances to subsequent budget periods pursuant to § 200.308(e)(3).</u>"

(emphasis added).  Once again, the Department's Denial Letter deceptively omitted the underlined language, which clearly establishes the Department's discretion to act.

122.    NYSED was clear when it advised the Department that the FY2018 CSP funds requested to be used in its Waiver Request were not otherwise allocated.  In fact, according to NYSED, at the time that it made the request, $86 million of its $95.5 million FY2018 CSP SE grant remained available for subgrants.

123.    Notably, in light of the current legislative cap on the award of new charters in New York City, it is exceedingly unlikely that NYSED will even be able to award and disburse the remaining $86 million in FY2018 CSP SE grant funds before its grant term also expires in 2022.

124.    On December 1, 2021, NYSED wrote to New York State Senators Chuck Schumer and Kirsten Gillibrand requesting their assistance in convincing the Department to reconsider its denial of NYSED's Waiver Request.[24]

---

[24] *See NYSED Letter to Senator Gillibrand*, New York State Education Department (Dec. 1, 2021), https://bit.ly/39B1P43; *NYSED Letter to Senator Schumer*, New York State Education Department (Dec. 1, 2021), https://bit.ly/37ahmqy.

125.    In a letter responding to an inquiry from Senator Gillibrand, the Department recycled the same justification it provided in its Denial Letter:

> NYSED's request was denied because granting the waiver would require the Secretary to disregard a fundamental requirement of Federal appropriations law: that Federal funds must be used only for the purpose or purposes for which they are appropriated (*See* 31 U.S.C. § 1301(a)).   Since the U.S. Government Accountability Office (GAO) is primarily responsible for establishing standards governing Federal fiscal law, the Secretary does not exercise administrative authority over this requirement.[25]

126.    The Department's Denial Letter and communications with members of Congress reflect an apparent willful misrepresentation of the law in an effort to deny its own discretion to act.  The provisions cited by the Department do not support the Department's position that it lacked authority to grant NYSED's Waiver Request.  To the contrary, these provisions make clear that Congress vested agencies like the Department with exactly the kind of discretion that NYSED requested in its Waiver Request, and that the Department refused to acknowledge.

127.    The Department's discretion to grant NYSED's Waiver Request and permit the unreimbursed charter schools to be made whole is undeniable.  Given that the only justification provided by the Department for its decision is facially incorrect, the Department has failed to adequately explain its decision or to establish that the denial was the product of reasoned decision making.  For this reason, the Denial Letter must be vacated as arbitrary and capricious.

### The Department's Denial Is Inconsistent with Past Practice and Results In Disparate Treatment

128.    The Department's position that it lacks authority to grant NYSED's Waiver Request is not only facially incorrect, it is also at odds with the Department's own practice.  Indeed,

---

[25] *U.S. DOE Letter to Senator Gillibrand*, U.S. Department of Education (Feb. 10, 2022), https://bit.ly/3kBuTKV.

the Department has granted waiver requests resulting in the reallocation of funds under similar circumstances and concerning the same state agency and CSP grant.

129.    Most notably, within months of NYSED's October 2020 Waiver Request, the Department granted a waiver request, also from NYSED, to reallocate funds from the very same FY2018 CSP SE grant.

130.    Specifically, in February 2021, the Department approved NYSED's waiver request made on behalf of Local Education Agencies ("LEAs") seeking flexibility from federal accountability requirements in the 2020-21 to permit NYSED to award FY 2018 CSP grant funds to schools to support COVID-19 related expenses.[26]

131.    Additionally, the Department has granted similar requests from many other states. For example, the Department granted Pennsylvania's request to extend the period of availability of funds in 2021.  Specifically, Pennsylvania requested and subsequently was granted a waiver of the subgrantee requirement that "limits an SEA's ability to grant to its LEAs a waiver of the 15 percent Title I, Part A carryover limitation in section 1127(a) to once every three years."[27]

132.    Similarly, the Department granted a waiver request permitting Florida, a CSP SE grant recipient, to provide subgrants under Florida's approved CSP SE grant to assist charter

---

[26] *See* State Education Department Seeks Stakeholder Input on Every Student Succeeds Act Waiver for 2021-22 School Year, New York State Education Department, ( Nov. 4, 2021) https://bit.ly/3oOODNx.  As another example, NYSED's FY2018 CSP SE grant application notes three additional instances in which the Department approved waiver requests to NYSED, pertaining to its FY2011 CSP SEA grant. *See* Application for Grants under the 84.282A CSP Grants to State Entities, New York State Education Department, at 727 (Apr. 20, 2018), https://bit.ly/3HQyrmy.
[27] PA Fiscal Waiver Response Letter, United States Dep't of Educ. (Aug. 25, 2021), https://bit.ly/3LEueVq.

schools with purchasing remote learning technology.[28]   Furthermore, several state education departments have been granted similar waivers, and were granted these waivers during the same period that NYSED requested the waiver on behalf of the School Plaintiffs.[29]

133.    The Department's claimed lack of discretion is thus starkly at odds with actions the Department has taken when confronted with materially similar waiver requests in the past, including requests related to the very same grant.  Courts have made clear that where, as here, "an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld." *Surface Transp. Bd.*, 403 F.3d at 776–77.

## CLAIM FOR RELIEF

### The Department's Denial of NYSED's Waiver Request Is Arbitrary and Capricious Under 5 U.S.C. § 706(2)(A)

134.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs.

135.    The APA requires courts to "hold unlawful and set aside" agency action that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A).  "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at

---

[28] Expanding Opportunity Through Quality Charter Schools Program; Request for Waivers and Application Amendments for Grant Award No. U282A160012, United States Dep't of Educ. (June 8, 2020), https://bit.ly/3LEsafZ.

[29] Other states that have been granted waivers include: Alaska, *see* AK Acct Waiver Response, United States Dep't of Educ. (June 9, 2021), https://bit.ly/3Bm5SLo; Arizona, *see also* AZ Acct Waiver Response, United States Dep't of Educ. (Apr. 6, 2021), https://bit.ly/3HRSMYA; and California, *see also* CA Acct Waiver Response, United States Dep't of Educ. (Apr. 6, 2021), https://bit.ly/3gLoAT6.

43.  Under the APA, "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 (2011).

136.    The Department's Denial Letter constitutes a final agency action subject to review under the APA.  An agency's decision is final when two conditions are met: "First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

137.    The Department's Denial Letter constitutes a final agency decision because: 1) it represents the consummation of the agency's decision-making process; and 2) the Department's decision to deny NYSED's Waiver Request effectively deprived the School Plaintiffs of lawfully awarded grant funds that are undeniably owed to them and are critical to serving vulnerable schoolchildren at an unprecedented time, including the children of the Parent Plaintiffs.

138.    The Department's Denial Letter is arbitrary and capricious because it is unreasoned and inadequately explained.  As set forth above, the sole disclosed justification for denying NYSED's Waiver Request was a purported lack of authority under relevant law.  That justification is incorrect.  Relevant statutes and regulations make clear the Department had the authority to consider NYSED's request on the merits, but chose instead and inexplicably to deny its own discretion to act.  That fact is underscored by the Department's practice of routinely granting similar waiver requests, including some made by the very same entity and concerning the same CSP grant funds.  On this basis alone, the Department's decision must be set aside as arbitrary and capricious.

139.    The Department's decision is arbitrary and capricious for the separate and additional reason that the Denial Letter results in disparate treatment.  "A long line of precedent has established that an agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently.'" *Cty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1022 (D.C. Cir. 1999), *cert. denied*, 530 U.S. 1204 (2000) (quoting *Transactive Corp. v. United States,* 91 F.3d 232, 237 (D.C. Cir. 1996)).   The Department has routinely granted waiver requests concerning CSP grants, including a request made by NYSED relating to the FY2018 CSP grant award.  The Department's renouncement of its own authority in the Denial Letter stands in contrast to its behavior in similar situations.  The Department has failed to acknowledge this disparate treatment, let alone explain why this situation should be treated differently.

## PRAYER FOR RELIEF

**NOW, THEREFORE,** Plaintiffs requests a judgment in their favor against Defendants as follows:

(a)     Declare that the Department's denial of NYSED's Waiver Request was inadequately explained, substantively unreasonable, and arbitrary and capricious;

(b)     Set aside and vacate the Department's denial of NYSED's Waiver Request;

(c)     Direct Defendants to consider NYSED's Waiver Request on the merits;

(d)     Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

(e)     Award such other and further relief as the Court determines to be just and proper.

Dated: June 6, 2022 Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

*/s/ Kent Yalowitz*
Kent Yalowitz
250 W 55th St
New York, NY 1001 9
Tel.: (212) 836-8344
kent.yalowitz@arnoldporter.com

*Attorney for Plaintiffs*