UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEANNA STROM et al., | |
| Plaintiffs, | |
| -v.- | 22 Civ. 4678 (JHR) |
| LINDA MCMAHON, in her official capacity as Secretary of the U.S. Department of Education; and U.S. DEPARTMENT OF EDUCATION, | OPINION & ORDER |
| Defendants. | |

JENNIFER H. REARDEN, District Judge:

Plaintiffs Deanna Strom, Bintou Ouattara, and Seham Swailam (collectively, the "Parent Plaintiffs"), and Zeta Charter Schools, Persistence Preparatory Academy, Valence College Prep, Buffalo Collegiate Charter School, and Cardinal McCloskey Community Charter School (collectively, the "School Plaintiffs") bring this action against Linda McMahon, in her official capacity as Secretary of the U.S. Department of Education (the "Secretary") and the Department of Education (the "Department") seeking judicial review pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, of the Department's denial of a request to reallocate charter school grant funds.[1] Before the Court are the parties' cross-motions for summary judgment.[2] ECF Nos. 40, 45.

The School Plaintiffs are charter schools that were awarded subgrants by the New York State Education Department ("NYSED") from a federal Charter School Grant Program ("CSP")

---

[1] The United States Senate confirmed Linda McMahon as Secretary of Education on March 3, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Secretary McMahon is substituted for former Secretary Cardona. *See Bradley v. McMahon*, No. 23 Civ. 5862 (SEG) (CMS), 2025 WL 1431332 (N.D. Ga. Mar. 31, 2025).

[2] This case was initially assigned to the Honorable Analisa Torres. It was reassigned to this Court in 2023.

administered by the Department.  ECF No. 17 (Am. Compl.) ¶¶ 1-6, 23-27.  The Parent Plaintiffs

are parents of students who attend charter schools operated by Plaintiff Zeta Charter Schools.  *Id.*

¶¶ 20-22.

Pursuant to a multiyear CSP grant awarded by the Department to NYSED in fiscal year

2011 ("FY 2011 Grant"), NYSED awarded subgrants to the School Plaintiffs.  *Id.* ¶¶ 4-5; ECF No.

30 (Admin. Record), ED1-ED9 (Notice Inviting Applications for FY 2011 grant program); *see*,

*e.g.*, ED169 (FY 2011 Grant Award Notification for "PERFORMANCE PERIOD 08/01/2011-

07/31/2016").[3]  In October 2019, some of the FY 2011 Grant funds NYSED had planned to use

"to support [CSP] subgrants were swept" by the U.S. Treasury and removed from NYSED's

account "before NYSED could reimburse the subgrantees for allowable expenses and request

drawdowns."  ED1741; ECF No. 42 (Puig Decl.), Ex. C (Denial Ltr.); *see* Am. Compl. ¶ 9.  As a

result, in October 2020, NYSED requested from the Department a "waiver" that it stated "would

allow NYSED to use a small portion" of funds from a separate multiyear CSP grant awarded to

NYSED in fiscal year 2018 ("FY 2018 Grant") "to support reimbursement to charter schools" that

were "awarded planning and implementation subgrants under [the FY 2011 Grant]."  ED1741-

ED1743.  In July 2021, the Department denied NYSED's waiver request.  According to the

Department, granting the waiver "would require the Department to disregard a fundamental

principle of Federal appropriations law . . . that '[a]ppropriations shall be applied only to the

objects for which the appropriations were made.'"  Denial Ltr. (quoting 31 U.S.C. § 1301(a)).[4]  As

---

[3] Citations to the Administrative Record are captioned with the Bates prefix "ED ___."  "A Rule
56.1 statement is not required in a case seeking review of an administrative action under the
APA because the case only presents a question of law."  *Teleanu v. Koumans*, 480 F. Supp. 3d
567, 575 n.11 (S.D.N.Y. 2020); *see Nat. Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 97
(2d Cir. 2001) (review of "agency action, findings, and conclusions" under the APA is "limited
to examining the administrative record").
[4] A portion of page 1 of the July 22, 2021 denial letter (the "Denial Letter") included in the
Administrative Record appears to be cut off.  ED1749.  Accordingly, the Court relies on the

a result, Plaintiffs allege, "NYSED could not disburse the remaining funds that the School Plaintiffs were promised and owed under their CSP subgrants."  Am. Compl. ¶ 9.

Plaintiffs argue that the Court should overturn the Department's decision as arbitrary and capricious under the APA, 5 U.S.C. § 706(2), because it was (1) "made on the basis of an erroneous view of [federal appropriations] law," 31 U.S.C. § 1301(a), under which the Department incorrectly asserted that "it lacked administrative authority to grant any waiver for the reallocation of funds between CSP Grant Programs"; and (2) "[i]nconsistent" with the Department's "past practices" of "grant[ing] waiver requests allowing the reallocation of funds under similar circumstances."  ECF No. 41 (Pls.' Br.) at 4-5, 17-23.

Defendants counter that (1) "the Secretary's waiver authority" is "committed to agency discretion by law" and therefore excluded from judicial review under the APA, 5 U.S.C. § 701(a)(2); (2) "the Secretary reasonably determined that granting NYSED's waiver request would require him to disregard a fundamental principle of Federal appropriations law," *see* 31 U.S.C. § 1301(a), and, by "excus[ing] NYSED from its obligation to exercise sound fiscal and management practices," "would not promote the purposes of the [CSP grant] program"; and (3) "[n]one of th[e] waivers" Plaintiffs cite "w[ere] granted under similar circumstances."  ECF No. 46 (Defs.' Br.) at 12-23 (internal citations and quotation marks omitted).

For the reasons set forth below, Plaintiffs' motion for summary judgment is DENIED and Defendants' cross-motion for summary judgment is GRANTED.

---

version of the Denial Letter submitted by Plaintiffs in support of their motion for summary judgment at Ex. C to the Declaration of Eliseo R. Puig.  *See* Puig Decl. Ex. C; *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 308 (S.D.N.Y. 2012) ("Courts have consistently held that the term 'the whole record' [in the APA] refers to the full record that was before the agency, meaning the agency decision-maker, at the time of the decision." (quoting 5 U.S.C. § 706)).

# BACKGROUND

I.    **Statutory and Regulatory Framework**

    **A.  The NCLB Program**

NYSED's FY 2011 Grant was authorized under the Elementary and Secondary Education Act of 1965 ("ESEA"), as amended by the No Child Left Behind Act of 2001 ("NCLB"), Pub. L. No. 107-110, 115 Stat. 1425 (Jan. 8, 2002).  Title V, Part B, Subpart I of NCLB provided for CSP grants (the "NCLB Program") for the purpose of:

> Increas[ing] national understanding of the charter schools model by—(1) providing financial assistance for the planning, program design, and initial implementation of charter schools; (2) evaluating the effects of such schools, including the effects on students, student academic achievement, staff, and parents; (3) expanding the number of high-quality charter schools available to students across the Nation; and (4) encouraging the States to provide support to charter schools for facilities financing in an amount more nearly commensurate to the amount the States have typically provided for traditional public schools.

NCLB § 5201.

Under the NCLB Program, "[t]he Secretary may award grants to State educational agencies having applications approved pursuant to section 5203 [of the Act] to enable such agencies to conduct a charter school grant program in accordance with this subpart." *Id.* § 5202(a).  "Grants awarded to State educational agencies . . . shall be for a period of not more than 3 years." *Id.* § 5202(c)(1).  In administering these grants, the "Secretary may waive any statutory or regulatory requirement over which the Secretary exercises administrative authority . . . if—(1) the waiver is requested in an approved application under this subpart; and (2) the Secretary determines that granting such waiver will promote the purpose of this subpart." *Id.* § 5204(e).

"State educational agenc[ies] receiving a grant . . . shall use such grant funds to award subgrants to one or more eligible applicants in the State to enable such applicant to plan and implement a charter school in accordance with this subpart" of the Act. *Id.* § 5204(f)(1).  Charter

schools were to use the CSP grants for "post-award planning and design of the educational program," "initial implementation," and "dissemination" purposes. *Id.* § 5204(f)(3), (6).

For fiscal year 2010, Congress appropriated funds to the Department to carry out the NCLB program. Consolidated Appropriations Act, 2010, Pub. L. No. 111–117, 123 Stat. 3034, 3263-3264 ("Innovation and Improvement," referring to Subpart 1 of Part B of Title V of ESEA). This appropriation specified that "each application submitted pursuant to section 5203(a)," the section detailing application requirements for State agencies, shall meet certain requirements, including, for example, that they "shall describe a plan to monitor and hold accountable authorized public chartering agencies." *Id.* For the most part, appropriations were similarly made "[f]or carrying out" the NCLB Program for fiscal years 2011 through 2016, with some modifications in funding amounts and conditions. *See* Department of Defense and Full-Year Continuing Appropriations Act, 2011, Pub. L. No. 112–10, div. B, tit. I, § 1101(a)(6), 125 Stat. 37, 102-103 (appropriating sums "out of any money in the Treasury not otherwise appropriated . . . for fiscal year 2011," including appropriations "under the authority and conditions provided in applicable appropriations Acts for fiscal year 2010 . . . that are not otherwise specifically provided for, and for which appropriations" were made available under the "Consolidated Appropriations Act, 2010"); *id.* § 1832(a) (funding for "Department of Education, Innovation and Improvement"); Consolidated Appropriations Act, 2012, Pub. L. No. 112–74, 125 Stat. 785, 1093 ("Innovation and Improvement"); Consolidated and Further Continuing Appropriations Act, 2013, Pub. L. No. 113–6, § 1101(a)(4), 127 Stat. 197, 412 (appropriating sums "under the authority and conditions provided in applicable appropriations Acts for fiscal year 2012 . . . that are not otherwise specifically provided for," including 2012 appropriations for the Department of Education in Pub. L. No. 112–74); Consolidated Appropriations Act, 2014, Pub. L. No. 113–76, 128 Stat. 5, 391 ("Innovation and Improvement"); Consolidated and Further Continuing Appropriations Act, 2015,

Pub. L. No. 113–235, 128 Stat. 2129, 2495; ("Innovation and Improvement"); Consolidated

Appropriations Act, 2016, Pub. L. No. 114–113, 129 Stat. 2241, 2630 ("Innovation and

Improvement").

### B.  The ESSA Program

After fiscal year 2016, Congress stopped appropriating funds for CSP grants under NCLB

and instead provided funding for CSP grants under the Every Student Succeeds Act ("ESSA"),

Pub. L. No. 114–95, 129 Stat. 1802 (Dec. 10, 2015).  *See* Consolidated Appropriations Act, 2017,

Pub. L. No. 115–31, 131 Stat. 135, 546 ("Innovation and Improvement") (appropriating funds

"[f]or carrying out activities authorized by . . . part[] C . . . of title IV of the ESEA," as amended

by the Every Student Succeeds Act in 2015).  Like the NCLB, the ESSA amended the ESEA.

Part C of Title IV of the ESSA (the "ESSA Program") contains the statutory provisions

pertaining to CSP grants, which amended and replaced the sections of the Act that previously

applied to the NCLB Program.  *See* ESSA § 4001(b).  The purpose of the ESSA Program is to:

> (1) improve the United States education system and education opportunities for all people
> in the United States by supporting innovation in public education in public school settings
> that prepare students to compete and contribute to the global economy and a stronger
> Nation; (2) provide financial assistance for the planning, program design, and initial
> implementation of charter schools; (3) increase the number of high-quality charter schools
> available to students across the United States; (4) evaluate the impact of charter schools on
> student achievement, families, and communities, and share best practices between charter
> schools and other public schools; (5) encourage States to provide support to charter schools
> for facilities financing in an amount more nearly commensurate to the amount States
> typically provide for traditional public schools; (6) expand opportunities for children with
> disabilities, English learners, and other traditionally underserved students to attend charter
> schools and meet the challenging State academic standards; (7) support efforts to
> strengthen the charter school authorizing process to improve performance management,
> including transparency, oversight and monitoring (including financial audits), and
> evaluation of such schools; and (8) support quality, accountability, and transparency in the
> operational performance of all authorized public chartering agencies, including State
> educational agencies, local educational agencies, and other authorizing entities.

*Id.* § 4301.  Under ESSA, the Secretary:

> may carry out a charter school program that supports charter schools . . . by—(1) supporting the startup of new charter schools, the replication of high-quality charter schools, and the expansion of high-quality charter schools; (2) assisting charter schools in accessing credit to acquire and renovate facilities for school use; and (3) carrying out national activities to support—(A) the activities described in paragraph (1); (B) the dissemination of best practices of charter schools for all schools; (C) the evaluation of the impact of the charter school program under this part on schools participating in such program; and (D) stronger charter school authorizing practices.

*Id.* § 4302(a).  "The recipient of a grant or subgrant under part B of title V (as such part was in effect on the day before the date of the enactment of [ESSA])"—in other words, the recipient of a grant or subgrant under the NCLB Program—"shall continue to receive funds in accordance with the terms and conditions of such grant or subgrant."  *Id.* § 4302(c).

ESSA § 4303 provides for "GRANTS TO SUPPORT HIGH-QUALITY CHARTER SCHOOLS."  *Id.* § 4303.  "A State entity desiring to receive a grant under this section shall submit an application to the Secretary at such time and in such manner as the Secretary may require."  *Id.* § 4303(f).  Then, "the Secretary shall award, on a competitive basis, grants to State entities having applications approved under subsection (f) to enable such entities to," *inter alia*:

> (1) award subgrants to eligible applicants to enable eligible applicants to—(A) open and prepare for the operation of new charter schools; (B) open and prepare for the operation of replicated high-quality charter schools; or (C) expand high-quality charter schools; and (2) provide technical assistance to eligible applicants and authorized public chartering agencies in carrying out the activities described in paragraph (1), and work with authorized public chartering agencies in the State to improve authorizing quality, including developing capacity for, and conducting, fiscal oversight and auditing of charter schools.

*Id.* § 4303(b); *see id.* § 4302(b)(3).

Like the NCLB, the ESSA provides that "[t]he Secretary may waive any statutory or regulatory requirement over which the Secretary exercises administrative authority . . . if—(A) the waiver is requested in an approved application under . . . section [4303]; and (B) the Secretary determines that granting such waiver will promote the purpose of this part."  *Id.* § 4303(d)(5).

For fiscal year 2018, Congress appropriated funds to the Department to "carry out" the ESSA Program. Consolidated Appropriations Act, 2018, Pub. L. No. 115–141, 132 Stat. 347, 743 ("Innovation and Improvement"). Congress made similar appropriations for the ESSA Program for fiscal years 2019 through fiscal year 2022. *See* Department of Defense and Labor, Health and Human Services, and Education Appropriations Act, 2019 and Continuing Appropriations Act, 2019, Pub. L. No. 115–245, 132 Stat. 2981, 3098 ("Innovation and Improvement"); Further Consolidated Appropriations Act, 2020, Pub. L. No. 116–94, 133 Stat. 2534, 2588 ("Innovation and Improvement"); Consolidated Appropriations Act, 2021, Pub. L. No. 116–260, 134 Stat. 1182, 1600 ("Innovation and Improvement"); Consolidated Appropriations Act, 2022, Pub. L. No. 117–103, 136 Stat. 49, 476 ("Innovation and Improvement").

### C.  Department of Education Regulations and the Office of Management and Budget's Uniform Guidance

The Department's regulations under 34 C.F.R. § 75 *et seq.* apply to "each direct grant program of the Department," including the NCLB and ESSA Programs. 34 C.F.R. § 75.1(a); *see* ED3 ("Applicable Regulations," Notice Inviting Applications for NCLB Program grants); ED15 ("Applicable Regulations," Notice Inviting Applications for ESSA Program grants). Among these regulations is § 75.700, according to which "[a] grantee shall comply with . . . applicable statutes, regulations, and approved applications, and shall use Federal funds in accordance with those statutes, regulations, and applications." 34 C.F.R. § 75.700.[5] Also relevant here is § 75.261(c), under which "the Secretary may permit the grantee to extend [a] project period if," *inter alia,* "(1) [t]he extension does not violate any statute or regulations; (2) [t]he extension does not involve the

---

[5] Throughout this Opinion, the Court cites the version of the C.F.R. that was in effect at the time of the Department's decision to deny NYSED's waiver request.

obligation of additional Federal funds"; and "(3) [t]he extension is to carry out the activities in the approved application." *Id.* § 75.261(c).

Grant recipients are further obligated to comply with the Office of Management and Budget's ("OMB") Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards ("Uniform Guidance"), 2 C.F.R. § 200 *et seq.* ED15; ED196-ED204. "The application of [OMB's] cost principles is based on the fundamental premises that," *inter alia*, "[t]he non-Federal entity" in receipt of a grant "is responsible for the efficient and effective administration of the Federal award through the application of sound management practices" and "assumes responsibility for administering Federal funds in a manner consistent with underlying agreements, program objectives, and the terms and conditions of the Federal award." 2 C.F.R. § 200.400(a)-(b).

OMB's Uniform Guidance includes "general criteria" that "costs must meet" "in order to be allowable under Federal awards," "[e]xcept where otherwise authorized by statute." *Id.* § 200.403. The "[f]actors affecting allowability of costs" include that costs "[b]e necessary and reasonable for the performance of the Federal award and be allocable thereto under [OMB] principles." *Id.* § 200.403(a). In addition, costs "must be incurred during the approved budget period," except that "[t]he Federal awarding agency is authorized, at its discretion, to waive prior written approvals to carry forward unobligated balances to subsequent budget periods pursuant to § 200.308(e)(3)." *Id.* § 200.403(h); *see id.* § 200.308(e)(3) ("[T]he Federal awarding agency is authorized, at its option, to waive other cost-related and administrative prior written approvals . . . [which] may include authorizing recipients to . . . [c]arry forward unobligated balances to subsequent budget periods.").

Pursuant to § 200.405, "[a]ny cost allocable to a particular Federal award under the principles provided for in [2 C.F.R. § 200 *et seq.*] may not be charged to other Federal awards to

overcome fund deficiencies, to avoid restrictions imposed by Federal statutes, regulations, or terms and conditions of the Federal awards, or for other reasons." *Id.* § 200.405(c). "However, this prohibition would not preclude the non-Federal entity from shifting costs that are allowable under two or more Federal awards in accordance with existing Federal statutes, regulations, or the terms and conditions of the Federal awards." *Id.*

## II.    The Administrative Record

On January 25, 2011, the Department published a "Notice Inviting Applications for New Awards" of "discretionary" CSP grants for fiscal year 2011, pursuant to the NCLB Program. ED1-ED9. The Notice set forth application and program requirements, selection criteria, and competitive preference priorities, citing several Department regulations, provisions of NCLB, and other authorities. ED2-ED8. For example, the "selection criteria for th[e] competition" included "20 U.S.C. 7221c [NCLB § 5204]," in addition to "the Consolidated Appropriations Act, 2010, Division D, Title III, Public Law 111–117." ED7. According to the Notice, "[t]he Department anticipate[d] that selection criteria similar to that in the Consolidated Appropriations Act, 2010 . . . w[ould] be included in the fiscal year 2011 appropriations act." *Id.*

On approximately March 18, 2011, NYSED applied for an NCLB Program grant. ED20-ED139. NYSED's "four project objectives" were to (1) "[i]ncrease the number of high-quality charter schools in New York State, especially those serving students who are at greatest risk of not meeting State academic standards"; (2) "[s]trengthen the overall quality of the New York State charter authorizing and CSP grant administrative infrastructure"; (3) "[p]romote the dissemination of New York State charter school best practices to other public schools"; and (4) "[i]mprove student achievement outcomes in New York State charter schools, particularly for students who are at greatest risk of not meeting State academic standards." ED38. In its application, NYSED requested that "the Secretary waive the limitation in Section 5202(c)(1) of [NCLB], which

authorizes the Secretary to award CSP grants to State Educational Agencies . . . 'for a period of not more than 3 years' to allow NYSED to receive a CSP grant for a period of 5 years."  ED60 (quoting NCLB § 5202(c)(1)).

In approximately August 2011, the Department awarded NYSED the FY 2011 Grant, a five-year "[d]iscretionary" CSP grant in the total amount of $113,343,065, under the authority of NCLB and for the performance period of August 1, 2011 through July 31, 2016.  *See* ED169. NYSED accessed grant funds through the Department by requesting "drawdowns" on funds "against the specified grant award."  ED175.

For each budget period,[6] funding for the FY 2011 Grant was made pursuant to the relevant appropriations act for that fiscal year.  *See*, *e.g.*, ED166 (requiring NYSED to comply with the Department of Defense and Full-Year Continuing Appropriations Act, 2011, Pub. L. No. 112–10, div. B, tit. VIII).  The Department approved annual "continuations" of the award for fiscal years 2012 through 2016, after the first budget period in fiscal year 2011.  *See*, *e.g.*, ED163-ED164 (2012-2013 Continuation); ED169-ED172 (fifth and "FINAL" fiscal year 2015-2016 Continuation); ED205 (listing funds obligated for the FY 2011 Grant); *see also* ED 8 ("Continuation Awards"); 34 C.F.R. § 75.251(a) ("The Secretary usually approves a budget period of not more than 12 months, even if the project has a multi-year project period.").  The terms and conditions of the continuations noted that "THE AWARD SUPPORTS ONLY THE BUDGET PERIOD SHOWN" and that "THE DEPARTMENT OF EDUCATION WILL CONSIDER CONTINUED FUNDING IF," among other things, "CONGRESS HAS APPROPRIATED SUFFICIENT FUNDS UNDER THE PROGRAM."  ED164.  The final budget period, fiscal year

---

[6] The budget period is defined as "[a] specific interval of time for which Federal funds are being provided from a particular fiscal year to fund a recipient's approved activities and budget." ED172.

2015-2016, required "[r]ecipients" to "comply with . . . conditions under [the] . . . Consolidated Appropriations Act, 2014." ED176 (grant attachment to Grant Award Notification for fiscal year 2015-2016) (citing Consolidated Appropriations Act, 2014, Pub. L. No. 113–76, div. H, tit. V, § 505).

On March 9, 2018, the Department published a notice inviting "Applications for New Awards" of "discretionary" CSP grants for fiscal year 2018, pursuant to the ESSA Program as "authorized under [ESSA]." ED10-ED19. On approximately April 20, 2018, NYSED applied for an ESSA Program grant. *See* ED206. As in its application for the FY 2011 Grant, NYSED's "objectives" for the ESSA Program grant were to (1) "[i]ncrease the number of high-quality charter school seats in New York State, especially for those charter schools serving students who are at greatest risk of not meeting State academic standards"; (2) "[i]mprove student achievement outcomes in New York State charter schools, particularly for students who are at greatest risk of not meeting State academic standards through high quality charter authorizing and technical assistance"; (3) "[p]romote the dissemination of New York charter school effective practices to other public schools"; and (4) "[s]trengthen the overall quality of the New York State charter authorizing and CSP grant administrative infrastructure." ED221.

In approximately September 2018, the Department awarded NYSED the FY 2018 Grant, which was a five-year "discretionary" CSP grant in the total amount of $95,555,556, under the authority of the ESSA and for the performance period of October 1, 2018 through September 30, 2023. ED1756-ED1762; *see* ED1742. NYSED accessed obligated grant funds through the Department's electronic payments system. ED1768-ED1769. "Continuations" of the award were provided for budget periods in fiscal years 2019-2020 and 2020-2021. ED1824 (Continuation for fiscal year 2019-2020); ED1885 (Continuation for fiscal year 2020-2021); *see* ED19 ("Continuation Awards"). Funds were disbursed upon approval for each budget period, subject to

the availability of congressionally-appropriated funds for the relevant fiscal year.  *See*, *e.g.*, ED1886-ED1889 (terms and conditions for fiscal year 2020-2021 Continuation); ED1848 (requiring grant recipients to comply with Continuing Appropriations Act, 2018, Pub. L. No. 115-141, div. H, tit. V, § 505); ED1909 (requiring grant recipients to comply with Continuing Appropriations Act, 2019, Pub. L. No. 115–245, div. B, tit. V, § 505).

The project period for the FY 2011 Grant did not lapse as anticipated in July 2016.  Instead, the Department granted NYSED's requests for "four[] no-cost obligation extension[s]" of those funds, pursuant to 34 C.F.R. § 75.261, permitting it to "extend the end date of the grant award" and use these funds through July 31, 2020.  ED140-ED147; *see* ED205.  Each of the "12-month obligation extension[s] [did] not require additional federal funds" or "change the approved objectives or scope of the grant."  ED140.  On July 22, 2019, after the Department approved NYSED's fourth and final extension, the Department informed NYSED that the remaining FY 2011 Grant funds in the amount of approximately $9.7 million for the fourth-year continuation funding (*i.e.* 2014-2015) would "expire on" September 30, 2019, and NYSED would "have until September 30, 2020 to liquidate" the approximately $10.5 million obligated for the fifth-year continuation funding (*i.e.* 2015-2016).  ED144-ED145.  NYSED confirmed that it was "aware of having to draw down the funds due to expire on [September 30, 2019]."  ED144.

NYSED failed, however, to draw down the remaining fourth-year continuation funds "to reimburse the subgrantees' costs prior to the funds expiring" on September 30, 2019.  Denial Ltr.; *see* Puig Decl., Ex. A at 1-2.  Thus, on October 1, 2019, the fourth-year continuation funds for the FY 2011 Grant "expir[ed] and revert[ed] to" the U.S. Treasury.  Denial Ltr.; *see* ED1741; 31 U.S.C. § 1552(a) ("On September 30th of the 5th fiscal year after the period of availability for obligation of a fixed appropriation account ends, the account shall be closed and any remaining balance . . . in the account shall be canceled and thereafter shall not be available for obligation or

expenditure for any purpose."); *see also* ED1794 ("Grantees need to be aware that, by law, Federal funds are available for grantees to draw down for only a limited period of time, after which the funds revert to the U.S. Treasury.").

On October 30, 2020, NYSED requested from the Department "a waiver from [the FY 2018 Grant] that would allow NYSED to use a small portion of its [FY 2018 Grant] funds to support reimbursement to charter schools awarded planning and implementation subgrants under [the FY 2011 Grant]."[7] ED1741-ED1743.  In its request letter, NYSED asserted that "there was a mutual misunderstanding regarding the length of time the [FY 2011 Grant] funds could be drawn down," and that "NYSED believed that [FY 2011 Grant] funds supporting the subgrants would be available through the length of the subgrant period."  ED1741.  "Instead, the [FY 2011 Grant] funds . . . to support the subgrants were swept . . . before NYSED could reimburse the subgrantees." *Id.*  "Due to the State's fiscal condition, made worse by the pandemic, NYSED ha[d] no other funds available to reimburse the subgrantees."  *Id.*  "As a result, NYSED request[ed] to use $886,655 of its [FY 2018 Grant] to reimburse . . . subgrantees," including School Plaintiffs. ED1741-ED1742.  Specifically, NYSED asserted that it wished to "[d]educt[] $886,655 from the total left for future planning and implementation subgrants" from its FY 2018 Grant and "allocate[]" those funds to FY 2011 Grant "planning and implementation subgrants."  ED1742-ED1743.  NYSED represented that "[a]ll of the NYSED-approved expenditures" for the subgrants under the FY 2011 Grant "were for activities that are allowed under the [FY 2018 Grant]." ED1742.

---

[7] According to NYSED, the Department "recommended and encouraged NYSED to submit a request to re-allocate the remaining subgrant awards from the 2011 grant to the 2018 grant." Puig Decl., Ex. D at 2.  In October 2020, the Department's Project Manager Ashley Gardner stated in an email to NYSED that, "if there is not enough money in the [FY 2018 Grant] to ask for the waiver and do the intended project, [NYSED] can request a supplement as well" as a waiver. ED160-ED161.

On July 22, 2021, the Department responded to NYSED's October 30, 2020 waiver request, asserting that it "must disapprove" it.  Denial Ltr.  The Department first stated that, under ESEA § 4303(d)(5), "the Secretary may waive 'any statutory or regulatory requirement over which [he] exercises administrative authority' if (1) the waiver is requested in an approved application for funds under the CSP . . . program; and (2) the Secretary determines that granting the waiver will promote the purposes of the program."  *Id.* (quoting ESEA § 4303(d)(5)).  The Department noted that, "[a]though [NYSED's] waiver request does not specify the requirements [it] seeks to have waived, granting the waiver would require the Department to disregard a fundamental principle of Federal appropriations law, as established in the U.S. Government Accountability Office's (GAO's) *Principles of Federal Appropriations* (also known as the *Red Book*), that '[a]ppropriations shall be applied only to the objects for which the appropriations were made . . .'" *Id.* (quoting 31 U.S.C. § 1301(a)).  "Because GAO is primarily responsible for establishing standards governing Federal fiscal law, the Secretary does not exercise administrative authority over this requirement and therefore, must disapprove [NYSED's] waiver request."  *Id.*

The Department also stated that "[t]he costs New York seeks to reimburse were incurred under its [FY 2011 Grant] and, as such, are not allocable to its [FY 2018 Grant]."  *Id.*  It noted that "[t]he Department's regulations at 34 C.F.R. § 75.700 specifically state that 'a grantee shall comply with . . . applicable statutes, regulations, and *approved applications*, and shall use Federal funds in accordance with those statutes, regulations, and *applications*.'"  *Id.* (quoting 34 C.F.R. § 75.700).  In addition, the Department stated that § 200.405(c) of OMB's Uniform Guidance "prohibits a grantee from charging costs allocable to one Federal award to a different Federal Award merely to overcome fund deficiencies."  *Id.* (citing 2 C.F.R. §§ 200.405(c), 200.403(a), (h)).  The Department concluded by stating that "[t]he standards governing Federal appropriations in GAO's *Red Book*, the Department's regulations, and the cost principles in the Uniform

Guidance help ensure that program funds are spent properly and that grantees exercise sound fiscal and management practices." *Id.*

## STANDARD OF REVIEW

Where "a party seeks review of agency action under the APA," 5 U.S.C. § 706, "the district judge sits as an appellate tribunal," and "[t]he entire case on review is a question of law." *Ass'n of Proprietary Colls. v. Duncan*, 107 F. Supp. 3d 332, 344 (S.D.N.Y. 2015) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). "Accordingly, the usual summary judgment standard under [Federal] Rule [of Civil Procedure] 56 does not apply because the Court need only 'address legal questions' to decide 'whether the agency acted arbitrarily, capriciously or in some other way that violates 5 U.S.C. § 706.'" *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 360 (S.D.N.Y. 2019) (quoting *Duncan*, 107 F. Supp. 3d at 344); *see Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012). In conducting this review, the court is "limited to the administrative record." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). Under the APA, "a reviewing court must hold unlawful and set aside any agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Karpova v. Snow*, 497 F.3d 262, 267 (2d Cir. 2007). "The scope of review under the 'arbitrary and capricious' standard is narrow, and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see Islander E. Pipeline Co. v. McCarthy*, 525 F.3d 141, 150 (2d Cir. 2008). "[A] court must be satisfied from the record that 'the agency . . . examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.'" *Islander*, 525 F.3d at 151 (quoting *State Farm*, 463 U.S. at 43). If an agency's "action is based upon a determination of law," an agency's decision "may not stand if the agency has misconceived the law." *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("*Chenery I*"); *see Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 86-87 (2d Cir. 2006).

16

Where a court "independently interpret[s] the statute" and concludes that the agency has properly interpreted the law, it will not set aside the agency's decision. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024).

## DISCUSSION

The parties' cross-motions raise three principal questions: (1) whether the Department's denial of NYSED's waiver request falls outside the scope of judicial review under the APA, 5 U.S.C. § 701(a)(2); (2) whether that decision—if it is subject to judicial review—was based on an erroneous understanding of the federal appropriations "Purpose Statute," 31 U.S.C. § 1301(a); and (3) absent a misconception of law, if the Department's decision was otherwise arbitrary and capricious, including, for example, because it was inconsistent with the Department's practice of granting waiver requests allowing the reallocation of funds under similar circumstances. For the reasons stated below, the Court concludes that the Department's decision is subject to judicial review and was not based upon a misconception of law. In short, the Department lacked the authority to grant NYSED's waiver request under federal appropriations law. Accordingly, the Court need not evaluate whether its decision was otherwise arbitrary and capricious.

## I.    Judicial Review of the Department's Legal Determination

"There is a strong presumption favoring judicial review of administrative action." *Salazar v. King*, 822 F.3d 61, 75 (2d Cir. 2016). Nonetheless, "agency action is not subject to judicial review 'to the extent that' such action 'is committed to agency discretion by law.'" *Lincoln v. Vigil*, 508 U.S. 182, 190-91 (1993) (quoting 5 U.S.C. § 701(a)(2)). This is a "narrow" exception, which applies in rare circumstances where the relevant statute "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *see Lincoln*, 508 U.S. at 191-92. "In the absence of an express statutory prohibition, the agency 'bears the heavy burden of overcoming the strong presumption

that Congress did not mean to prohibit all judicial review of [its] decision.'" *Salazar*, 822 F.3d at 75 (quoting *Dunlop v. Bachowski*, 421 U.S. 560, 567 (1975)).

"[B]efore any [judicial] review at all may be had, a party must first clear the hurdle of § 701(a)." *Chaney*, 470 U.S. at 828. Accordingly, the Court first addresses whether Defendants have satisfied their "heavy burden" of showing that the Department's decision to deny NYSED's waiver request was an action "committed to agency discretion by law." *Salazar*, 822 F.3d at 75; 5 U.S.C. § 701(a)(2). Defendants argue that ESSA § 4303(d)(5), which permits "[t]he Secretary [to] waive any statutory or regulatory requirement" over which she "exercises administrative authority," is "committed to [the Department's] discretion by law," and "provides no meaningful standard against which to judge the Secretary's waiver determination." Defs.' Br. 12-13; *see* ECF No. 48 (Defs.' Reply) at 2-4.

Even where a statute commits an action to agency discretion, it "does not bar judicial review of [the agency's] nondiscretionary, or purely legal, decisions." *Sepulveda v. Gonzales*, 407 F.3d 59, 63 (2d Cir. 2005) (concluding that a statute prohibiting judicial review of the Attorney General's discretionary determinations about an immigrant's eligibility for certain relief "does not strip courts of jurisdiction to review nondiscretionary decisions regarding an alien's eligibility"). Therefore, as a threshold matter, the Court must determine whether the Department concluded that it *lacked authority*, as a matter of law, to grant NYSED's request or if its denial was a discretionary determination pursuant to ESSA. *See Chenery II*, 332 U.S. at 196-97 ("It will not do for a court to be compelled to guess at the theory underlying the agency's action"). In so doing, the Court must look to the administrative record, as opposed to "after-the-fact rationalization," for the basis for the agency's action. *Yale-New Haven Hosp.*, 470 F.3d at 81-82 (citing *Chenery I*, 318 U.S. at 87).

The Department's July 22, 2021 Denial Letter provides a "contemporaneous explanation" for the Department's decision to deny NYSED's waiver request and, "in light of the existing administrative record," it is the best evidence of the Department's reasoning. *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019); *Chenery I*, 318 U.S. at 94. In the Denial Letter, the Department, citing ESSA § 4303(d)(5), explained that the Secretary "may waive 'any statutory or regulatory requirement over which [he] exercises administrative authority.'" Denial Ltr. (citation omitted). In the ensuing sentence, the Department, referencing the Purpose Statute, 31 U.S.C. § 1301(a), asserted that, in this instance, "the waiver would require the Department to disregard a fundamental principle of Federal appropriations law . . . that '[a]ppropriations shall be applied only to the objects for which the appropriations were made.'" *Id.* (quoting 31 U.S.C. § 1301(a)). Next, the Department stated that, in any event, "[b]ecause GAO is primarily responsible for establishing standards governing Federal fiscal law, the Secretary does not exercise administrative authority over this requirement and therefore, *must* disapprove [NYSED's] waiver request." *Id.* (emphasis added). Thus, the Department's decision was made on the ground that it *lacked* the administrative authority to grant NYSED's waiver request under ESSA § 4303(d)(5). *See, e.g.*, *Transitional Hosps. Corp. of La., Inc. v. Shalala*, 222 F.3d 1019, 1029 (D.C. Cir. 2000) (Garland, J.) (explaining that, although defendant's "briefs suggest that the Secretary" of Health and Human Services "did realize that she had . . . discretion," "most relevant" was the notice issued at the time of the Secretary's decision, which "ma[de] it quite clear the Secretary did not believe that she had the discretion to do what the plaintiffs request"); *see also Chenery I*, 318 U.S. at 87-92 (holding that, "[s]ince the decision of the [S.E.C.] was explicitly based upon the applicability of principles of equity announced by courts, its validity must likewise be judged on that basis," despite statutes that could have permitted the S.E.C. to rely upon "its special administrative competence.").

Defendants argue that the denial of NYSED's waiver request was not based solely on federal appropriations law.  According to Defendants, the denial also relied on the Department's determination that granting the waiver would "not promote the purpose of the ESSA Program" because such a waiver "would be incompatible with federal regulations designed to ensure that grantees exercise sound fiscal and management practices."  Defs.' Reply 2-3.  In support of this theory, Defendants identify three points in the Denial Letter: (1) "[t]he Department's regulations at 34 C.F.R. § 75.700 specifically state that 'a grantee shall comply with . . . applicable statutes, regulations, and *approved applications*, and shall use Federal funds in accordance with those statutes, regulations, and *applications*,'" Denial Ltr. at 3 (quoting 34 C.F.R. § 75.700); (2) "section 200.405(c) of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (Uniform Guidance) prohibits a grantee from charging costs allocable to one Federal award to a different Federal award merely to overcome fund deficiencies," *id.*; and, in conclusion, (3) "[t]he standards governing Federal appropriations in GAO's *Red Book*, the Department's regulations, and the cost principles in the Uniform Guidance help ensure that program funds are spent properly and that grantees exercise sound fiscal and management practices," *id.*  But these statements do not demonstrate that *the Department* made a discretionary determination.  If anything, they reinforce that the Department did not view itself as having administrative authority to grant the requested waiver.  *Id.*  The Department's "nondiscretionary, or purely legal, decision[]" is therefore subject to judicial review.[8]  *Sepulveda*, 407 F.3d at 63.

---

[8] Because the Court concludes that the Department's legal determination is reviewable, it need not and does not reach the question of whether the ESSA program waiver authority at issue is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).

## II.    Federal Appropriations Law

Under the Appropriations Clause of the Constitution, "[n]o money shall be drawn from the Treasury, but in Consequence of Appropriations made by law."  U.S. Const. art. I, § 9, cl. 7.  "The Clause's words convey a 'straightforward and explicit command': No money 'can be paid out of the Treasury unless it has been appropriated by an act of Congress.'"  *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1346 (D.C. Cir. 2012) (quoting *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990)).  "Federal statutes reinforce Congress's control over appropriated funds."  *Id.* at 1347 (citing 31 U.S.C. § 1301(a)).  Under the federal appropriations Purpose Statute, "[a]ppropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law."  31 U.S.C. § 1301(a).

The parties dispute whether the Purpose Statute barred the Department from granting NYSED's waiver request.  31 U.S.C. § 1301(a); *see* Pls.' Br. 17-21; Defs.' Br. 13-19.  Defendants argue that the "[t]he waiver NYSED sought—which would have reallocated funds from one congressional appropriation made pursuant to one statute [*i.e.*, the FY 2018 Grant pursuant to ESSA] to make up a funding deficiency for activities already carried out under a prior appropriation made pursuant to a different statute [*i.e.*, the FY 2011 Grant pursuant to NCLB]— is not 'provided for by law,' 31 U.S.C. § 1301(a)."  Defs.' Br. 19; *id.* at 17-18 ("[A]lthough the categories of costs may be similar [for the two grants], they were incurred under different grants, authorized [by Congress] under different statutes, and awarded under different competitions and different grant applications.").  Defendants note that NYSED's applications for the FY 2011 and FY 2018 Grants "differed in meaningful respects . . . consistent with the different objectives, purposes, priorities, and proposed activities for which Congress authorized spending under those two grants."  *Id.* at 15.

Plaintiffs do not argue that, by shifting money appropriated to the ESSA Program (*i.e.*, the FY 2018 Grant) to cover the shortfall in the FY 2011 Grant, the Department would have applied the ESSA Program appropriation to the "objects for which the appropriations were made."[9]  31 U.S.C. § 1301.  Instead, Plaintiffs contend that Defendants' denial of NYSED's waiver request was "based on a misconception of law," Pl.'s Br. 17-21, because the Department ignored the Purpose Statute's except-as-otherwise-provided-by-law clause.  *Id.* at 18 (citing 31 U.S.C. § 1301(a)).  According to Plaintiffs, there are "several" such "sources of law" that "vest the Department with explicit authority to change the terms or conditions of a grant award made pursuant to the CSPs," thereby permitting the Department to grant NYSED's request without violating the Purpose Statute.  *Id.*  These sources of law include the Department's "authority over the administration of the CSP . . . grant programs" under ESSA § 4303(b), and, as relevant here, its "express authority to 'waive any statutory or regulatory requirement' concerning the programs,

---

[9] In any event, "[a]gencies may transfer funds from one appropriation to another only if authorized by specific statutory authority."  3 GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW at 3-30; *see* 31 U.S.C. § 1532 ("An amount available under law may be withdrawn from one appropriation account and credited to another or to a working fund only when authorized by law.").  "The fact that the expenditure would be authorized under some other appropriation is irrelevant . . . unless authorized by some statute such as 31 U.S.C. § 1534 . . . [it] violates the purpose statute."  3 GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW at 3-12.  Therefore, absent express statutory authority, the Department could not use funds from any FY 2018 Grant appropriation to cover costs for the since-closed FY 2011 Grant, for which funds had already been appropriated, obligated, and disbursed.  *See South Carolina v. United States*, 144 Fed. Cl. 277, 284 (2019) (concluding that "[a]n appropriation made for a specific object," like the ESSA Program, is available to apply to an expenditure only if, *inter alia*, "the expenditure [is] not [] provided for in another appropriation"); *South Carolina*, 144 Fed. Cl. at 288 (rejecting argument where "plaintiff provide[d] no legal support for the proposition that th[e] court ha[d] the authority to direct an agency to reprogram funds appropriate for one purpose to another purpose"); *Lowell P. Weicker, Jr.*, 1982 WL 28066, at *4 ("Because we are unaware of any other statutory [authority] that [the Department of] Commerce has to effectuate transfers between appropriations, we must conclude that the Commerce actions . . . are thus unlawful."); *see, e.g., Pa., Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 154 (3d Cir. 2012) (affirming decision holding that Pennsylvania Department of Public Welfare violated the Purpose Statute, where it "failed to identify any . . . statutory provision that supersedes § 1301(a)").

including by granting a waiver for reallocation of funds between programs" under ESSA § 4303(d)(5).  *Id.* (quoting ESSA § 4303(d)(5)).  Plaintiffs also maintain that the OMB Uniform Guidance provisions cited by the Department in the Denial Letter support their argument that "monies can be shifted between similar programs if, as here, the funds being reallocated are equally 'allowable' under the terms of the Federal awards," and that the Department had the "discretion to act" on NYSED's request.  *Id.* at 18-20.

Following accepted principles of statutory construction, "[o]ur first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."  *Disabled in Action of Metro. N.Y. v. Hammons*, 202 F.3d 110, 119 (2d Cir. 2000) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole."  *Id.* (quoting *Robinson*, 519 U.S. at 341).

Based on a plain reading of § 4303(d)(5), the Secretary only has the authority to waive those "statutory or regulatory requirement[s] over which the Secretary exercises administrative authority" in the first place.  ESSA § 4303(d)(5).  In other words, § 1403(d)(5) does not permit the Secretary to waive *any* requirement related to the ESSA Program.  She may only waive those requirements over which she "exercises administrative authority."  ESSA § 4303(d)(5).

Plaintiffs conflate the Secretary's administrative authority over certain "statutory or regulatory requirements," *id.*, on the one hand, with her "administrative authority over the ESSA's charter school grant program" in general, on the other hand.  ECF No. 47 at 6.  According to Plaintiffs, the Secretary has waived requirements related to CSP grant administration, including the grant project period, *see* NCLB § 5202(c)(1) ("Grants awarded to State educational agencies . . . shall be for a period of not more than 3 years."); limits on the number of grants a subgrantee

may receive, *see* 20 U.S.C. § 7221b(e)(2) ("An eligible applicant may not receive more than 1 subgrant under this section for each individual charter school for a 5-year period . . ."); and the terms of a grant award. *See* Pl.'s Br. at 21-23 (citing *Application for Grants Under the 84.282A CSP Grants to State Entities,* New York State Education Department, at 727 (Apr. 20, 2018), https://bit.ly/3HQyrmy; *Request for Waivers and Application Amendments for Grant Award No. U282A160012*, United States Dep't of Educ. (June 8, 2020), https://bit.ly/3LEsafZ). Defendants correctly emphasize, however, that these examples of modifications to grant requirements are "a far cry from seeking authorization to use funds awarded under one grant to make up a deficiency in a past grant." Def.'s Br. at 22.

The Secretary does not "exercise administrative authority," ESSA § 4303(d)(5), over federal appropriations law. The Secretary's waiver authority in § 4303(d)(5) therefore does not supply a basis "provided by law" to disregard the Purpose Act's requirement that "[a]ppropriations shall be applied only to the objects for which the appropriations were made." 31 U.S.C. § 1301(a). Nor does OMB's Uniform Guidance vest the Department with authority to shift funds between grants authorized by different appropriations. For one thing, while the Uniform Guidance does "not preclude the non-Federal entity from shifting costs that are allowable under two or more Federal awards," it must do so "in accordance with existing Federal statutes, regulations, or the terms and conditions of the Federal awards," including the Purpose Statute. 2 C.F.R. § 200.405(c). For another, the Department's authority to "waive prior written approvals to carry forward unobligated balances to subsequent budget periods" for a particular grant does not permit it to reallocate funds authorized under one appropriation to cover costs incurred under a different appropriation. 2 C.F.R. § 200.403(h).

Because granting the request would violate 31 U.S.C. § 3101(a), the Department correctly rejected NYSED's waiver request. *See Lowell P. Weicker, Jr.*, 1982 WL 28066, at *4 (holding

that the Department of Commerce violated 31 U.S.C. § 3101(a) in charging to a later appropriation costs formerly covered under a previous appropriation, even though the costs otherwise met the purposes of both appropriations); *see also* Use of Agencies' Appropriations to Purchase Comp. Hardware for Dep't of Labor's Exec. Comput. Network*, 70 Comp. Gen. 592, 596 (1991) (holding that transfers between agency accounts violated 31 U.S.C. 3101(a), as funds were designated under separate appropriation acts).

Accordingly, the Department did not "misconceive[] the law" in denying NYSED's waiver request, as it correctly determined that it had no authority under federal appropriations law to grant the request.  *See Chenery I*, 318 U.S. at 94; *see also U.S. Dep't of Navy*, 665 F.3d at 1351.  For this reason, the Court need not and does not address the parties' additional arguments—for example, Plaintiffs' argument that the Department's decision was "inconsistent" with the Department's "past practices" of "grant[ing] waiver requests allowing the reallocation of funds under similar circumstances."  Pls.' Br. 21-23.

## CONCLUSION

In view of the foregoing, the Department's denial of NYSED's request was not arbitrary and capricious.  Plaintiffs' motion for summary judgment is DENIED, and Defendants' cross-motion for summary judgment is GRANTED.  The Clerk of Court is directed to enter judgment for Defendants and to close the case.

SO ORDERED.

Dated: June 24, 2025
New York, New York

_____
JENNIFER H. REARDEN
United States District Judge